## CHICAGO, M. & ST. P. RY. CO. v. CITY OF SPENCER, IOWA.

### (District Court, N. D. Iowa, W. D. July 31, 1922.)

#### No. 93.

1. **Evidence ⚖=25(2)—Removal of causes ⚖=94—Judicial notice taken of location of municipalities, and petition corrected.**

   An allegation in a petition for removal, in a suit involving a special sewer assessment, that complainant was a corporation of another state, and defendant "an incorporated town," *held* sufficient to show diversity of citizenship, though in fact defendant was a city of the second class; the court taking judicial notice that a town or city in its district is incorporated under the laws of the state and is a citizen thereof, and the error in description being also a matter of judicial knowledge, and subject to correction by amendment.

2. **Removal of causes ⚖=44—Nominal plaintiff may be defendant for removal purposes.**

   On an appeal by a property owner from a special sewer assessment to the district court, under Code Iowa 1897, § 839, the case being triable as in equity, de novo, appellant, while nominally plaintiff, is in effect the defendant, and should be considered such for removal purposes.

3. **Removal of causes ⚖=11—Limitation to causes of which federal court has original jurisdiction.**

   That a proceeding in a state district court to review a sewer assessment made by a city board could not have been brought originally in a federal court *held* not to prevent its removal by the property owner, where it is essentially a suit in equity, triable de novo.

4. **Removal of causes ⚖=4—Proceeding in court to review special tax assessment is a "suit."**

   A proceeding in a district court of Iowa on appeal from a special sewer assessment made by a city council, which under Code Iowa 1897, § 839, is triable as an action in equity, and in which "all questions touching the validity of such assessment, or the amount thereof, * * * shall be heard and determined," including the question of benefits to the property assessed, *held* a "suit," within Judicial Code, § 28 (Comp. St. § 1010), and removable.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

In Equity. Suit by the Chicago, Milwaukee & St. Paul Railway Company against the City of Spencer, Iowa. On motion to remand to state court. Denied.

Hughes, Taylor & O'Brien, of Des Moines, Iowa, for plaintiff.

Heald, Cook & Heald, of Spencer, Iowa, for defendant.

SCOTT, District Judge. The proceeding is one by the city of Spencer, Clay county, Iowa, to assess portions of the cost of a storm and sanitary sewer against certain abutting and adjacent property of the

---

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Chicago, Milwaukee & St. Paul Railway Company. Upon the completion of the sewer, and pursuant to the Iowa statute, the city at the proper stage of the proceeding gave notice of the proposed assessment, and the railway company appeared by counsel at the proper time and filed objections to the assessment, which were overruled. The city authorities thereupon levied the assessment, and the railway company, in conformity with the Iowa statute, perfected its appeal to the district court of Iowa for Clay county. Upon the docketing of the cause in the state court, the railway company gave notice and filed its petition and bond for the removal of the proceeding to the District Court of the United States for the Northern District of Iowa, Western Division. The ground of removal is that of diversity of citizenship of the parties and requisite amount involved. The city of Spencer appears in this court and moves to remand the proceeding to the state court, and the questions presented by that motion are now to be considered and decided.

The statute of Iowa contains the following provisions:

Code Iowa 1897, § 817: "The cost of any street improvement or sewer at the intersection of streets, highways, avenues and alleys, or any part of it, and one-half of the cost of the same at spaces opposite streets, highways, avenues and alleys intersecting but not crossing and at spaces opposite property owned by the city or the United States, or any part thereof, may be paid, in case of sewers, from the city sewer fund or the district sewer fund of such sewer district, or the general revenue of said city, or as provided in the second following section. * * * "

Code Iowa 1897, § 819: "The cost, or any part thereof, of making or reconstructing sewers, including that provided for in the second preceding section, may be paid from the district sewer fund of the sewer district in which the same is situated, or from the city sewer fund, or from the general revenue, and the portion thereof not so paid, and not in excess of three dollars per linear foot of sewer, shall be assessed against the property abutting on such sewer in proportion to the number of linear front feet of each parcel thereof, and upon adjacent property in proportion to the benefit thereto; but in estimating the benefits to result therefrom to adjacent property, no account shall be taken of improvements, and each lot or parcel of land shall be considered as wholly unimproved. The city may combine any or all of said methods of assessment."

Code Supp. Iowa 1913, § 820: "When the making or reconstruction of any street improvement or sewer shall have been completed, or such part thereof shall have been completed as, under the contract, is to be paid for when done, the council, or board of public works where such board exists, shall within twenty days following the completion of the making or reconstruction of said street improvement or sewer, ascertain the cost thereof, including the cost of the estimates, notices, inspection, and preparing the assessment and plat, and shall also ascertain what portion of such cost shall be, by law and the ordinance or resolution of the council under which such street improvement was made or sewer constructed assessable upon abutting property; and, in case of sewers, also upon adjacent property, and what portion shall be assessed upon such abutting property, and in case of sewers, upon such abutting and adjacent property, for intersections and spaces opposite property owned by the city or the United States; and the council shall then assess such portions upon and against such property as provided by law."

Code Iowa 1897, § 821: "In assessing that part of the cost of the making or reconstruction of any street improvement or sewer, or completed part thereof, which is assessable against the lots or parcels of ground abutting thereon, or, in case of sewers, adjacent thereto, the council, or board of public works where such board exists, shall cause to be prepared a plat of the streets, avenues, highways, alleys, or the part thereof on which the same shall have been made or reconstructed, showing the separate lots or parcels of ground, or

specified portion thereof, subject to assessment for such improvement, the names of the owners thereof as far as practicable, and the amount to be assessed against each lot or parcel of ground, and against any railway or street railway, and shall file said plat and schedule in the office of the clerk, which shall be subject to public inspection."

Code Iowa 1897, § 822, provides for certain estimates to be made by the city engineer. Code Iowa 1897, § 823; Supplement of 1913, § 823; Acts 38th Gen. Assem. c. 386, § 1—provides for notice of the assessment by publication.

Code Iowa 1897, § 824: "All objections to errors, irregularities or inequalities in the making of said special assessments, or in any of the prior proceedings or notices, not made before the council at the time and in the manner herein provided for, shall be waived except where fraud is shown."

Code Iowa 1897, § 839: "Any person affected by the levy of any special assessment provided for in this chapter may appeal therefrom to the district court within ten days from the date of such levy, by serving written notice thereof upon the mayor or clerk, and filing a bond for costs, to be fixed and approved by either of said officers. Upon such appeal, all questions touching the validity of such assessment, or the amount thereof, and not waived under the provisions of this chapter, shall be heard and determined. The appeal shall be tried as an equitable action, and the court may make such assessment as should have been made, or direct the making of such assessment by the council. The costs of the appeal shall be taxed as in other actions."

The motion to remand includes four separate grounds, in substance as follows: (1) That the proceeding is not a suit within the meaning of the statutes of the United States authorizing removal. (2) That the proceeding is not within the original jurisdiction of courts of the United States. (3) That the petition for removal does not show that the proceeding is a controversy between citizens of different states. (4) That the petition for removal is filed by a plaintiff, and the statutes of the United States relating to the removal of causes limits the right of removal to defendants. It is deemed most logical to consider the third and fourth grounds of the motion first, as they relate to the conformities effecting the removal.

There is no provision in the Iowa statutes particularly relating to the method of docketing such proceeding in the state court. The appeal is taken and perfected by serving written notice thereof upon the mayor or clerk of the municipality, and filing a bond for costs, to be fixed and approved by either of said officers. It is quite customary to perfect the docketing of the cause in the state court by filing a transcript of the notice of appeal and serving a bond and proceedings upon the city council. This method, however, is not universal. The practice observed is generally similar to that observed on appeal in condemnation proceedings and other tax equalization matters. The Supreme Court of Iowa in Simons v. Railway Co., 128 Iowa, 139, 103 N. W. 129, which was a condemnation proceeding, used the following language:

"It will be observed that the appeal is taken and perfected by the service of notice on the adverse party and the sheriff. From that time down until the final disposition of the case it is in the court to which the appeal is taken. Bank v. City, 118 Iowa, 84; City v. Loan Co., 122 Iowa, 629. There is no statute which expressly requires the filing of a transcript in order to give the district court jurisdiction; and such a document is necessary only for the purpose of furnishing the data for the docketing of the case, or to show the trial court what was in issue, in order that it may intelligently submit the

issues and render judgment for the proper party. If the case properly gets upon the docket, even in the absence of transcript, and without the payment of the docket fee, appellee cannot have the appeal dismissed or the judgment or award affirmed under the statutes relied upon. Assuming that the court acquired jurisdiction by the serving of notice of appeal, the only object in docketing the case is to prevent delay and to secure a trial in regular order. A transcript is not really required until the case is reached for trial. This has been the uniform holding of this court. Robertson v. Railroad, 27 Iowa, 245; Bank v. City, 118 Iowa, 84; City v. Loan Co., 122 Iowa, 629; City v. Railroad Co., 120 Iowa, 259; Vasey v. Parker, 118 Iowa, 615."

On occasion appellants in these matters, in docketing the appeal, have adopted the method of filing a petition in the state court, and that method was adopted in the instant case. Respecting this method the Supreme Court of Iowa, in Frost v. Board of Review, 114 Iowa, 103, 86 N. W. 213, used the following language:

"Appellant might have at least filed a certified copy of the proceedings of the board of review showing appellant's complaint and the board's action or want of action, or perhaps he might have stated the facts to the district court in a petition, as seems to have been done in Richards v. Town of Rock Rapids, 72 Iowa, 78."

As above stated, the petitioner herein, in effecting the docketing of the cause in the state court, filed what it denominated a petition in equity, in which it generally alleged the proceedings that had taken place before the city council, including the service of notice of appeal and the filing of bond, but in connection with which was exhibited no transcript of the notice, bond, or other proceedings. Within proper time the petitioner, appellant in the court below, filed its petition for removal to this court, in which it alleged that the railway company was a citizen of the state of Wisconsin, and that the city of Spencer was an incorporated town, and that the amount in controversy, exclusive of interest and costs, exceeded the value of $3,000, and generally described the nature of the proceeding. Due notice of the petition was given, and bond for removal was filed and approved. At the time of the submission of the motion to remand, petitioner was also permitted to file an amendment to the petition for removal, upon which was exhibited a transcript of the notice of appeal, bond, and proceedings before the city council.

[1] The first question to be considered is whether the petition for removal sufficiently alleges diversity of citizenship. The petition alleges that the city of Spencer is an incorporated town, and the court will take judicial notice that an incorporated town existing within this judicial district is incorporated under the laws of the state of Iowa, and is for jurisdictional purposes a citizen of the state of Iowa. It is quite possible, however, that the petitioner is mistaken with respect to its allegation, and that the city of Spencer is a city of the second class, and not an incorporated town; but the same practice with respect to judicial notice would apply, and the error is a matter that may be corrected by amendment in this court. It is also suggested that good pleading would have dictated the specific allegation of citizenship. The court is therefore of opinion that this question should be resolved against the motion, subject to the proper amendment.

[2] The second question to be considered is whether petitioner is a defendant in the proceeding, within the meaning of the statutes of the

United States relative to the removal of causes. In determining this question the court will look behind the mere position of parties in the title of the cause or proceeding, and into the nature of the proceeding and the relation of the parties to the issues and the controversy. The proceeding is of course initiated by the municipality. From the action of the municipal authorities an appeal to the district court of the state, which is a court of general jurisdiction, is allowed "any person affected."

"Upon such appeal, all questions touching the validity of such assessment, or the amount thereof, * * * shall be heard and determined. The appeal shall be 'tried as an equitable action, and the court may make such assessment as should have been made, or direct the making of such assessment by the council."

It will be observed that the appeal is to be tried as an equitable action, and this, under the Iowa Constitution and statutes, implies a trial de novo. From the language used by the Supreme Court of Iowa in Simons v. Railway Company, supra, above quoted, it would appear that the issue is to be joined on a transcript of the proceedings before the city council, or a recital of them, and the objections filed by the property owner. In these circumstances it would seem that the property owner is placed on the defensive, equally as in the instance of ordinary condemnation proceedings, and that for the purpose of removal it should be considered as a defendant. The court is therefore of opinion that this question should be resolved against the motion.

[3] The third question raised by the second ground of the motion, that the proceeding is not within the original jurisdiction of courts of the United States, must be ruled by the decision of the Supreme Court of the United States in Commissioners of Road Improvement District No. 2 v. St. Louis Southwestern Railway Co., 257 U. S. 547, 42 Sup. Ct. 250, 66 L. Ed. ——, decided February 27, 1922. In that case Mr. Chief Justice Taft, in delivering the opinion of the court, said:

"The next objection is that the road district commissioners could not file their assessment book in the federal court, assuming the necessary diverse citizenship against any lot or lot owner, and so that inquiry cannot be removed, because, under section 28 of the Judicial Code, removal is limited to cases within the original jurisdiction of the District Court under section 24. This limitation is not intended to exclude from the right of removal defendants in cases in the state court which, because of their peculiar form, would be awkward as an original suit in a federal court, or would require therein a reframing of the complaint and different procedure. Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 579, 13 Sup. Ct. 936, 37 L. Ed. 853, 856; Fleitas v. Richardson, 147 U. S. 538, 544, 13 Sup. Ct. 429, 37 L. Ed. 272. The limitation is that only those proceedings can be removed which have the same essentials as original suits permissible in District Courts; that is, that they can be readily assimilated to suits at common law or equity, and that there must be diverse citizenship of the parties and the requisite pecuniary amount involved. In re Stutsman County, 88 Fed. 337; Madisonville Traction Co. v. St. Bernard Min. Co., 196 U. S. 239, 246, 25 Sup. Ct. 251, 49 L. Ed. 462; Searl v. School Dist., 124 U. S. 197, 8 Sup. Ct. 460, 31 L. Ed. 415; Colorado Midland R. Co. v. Jones (C. C.) 29 Fed. 193."

[4] The final question here presented for determination is embodied in the first ground of the motion to remand. It raises the question that this proceeding—

"is not a suit within the meaning of the statutes of the United States authorizing the removal of certain suits from the state courts to the United States courts."

The character of the questions permitted to be presented and litigated on appeals of this character is to be determined from an examination of the state statute. Section 819 of the Code of Iowa heretofore quoted provides that:

"The cost or any part thereof, of making or reconstructing sewers, including that provided for in the second preceding section, may be paid from the district sewer fund of the sewer district in which the same is situated, or from the city sewer fund, or from the general revenue, and the portion thereof not so paid, and not in excess of three dollars per linear foot of sewer, shall be assessed against the property abutting on such sewer in proportion to the number of linear front feet of each parcel thereof, and upon adjacent property in proportion to the benefit thereto; but in estimating the benefits to result therefrom to adjacent property, no account shall be taken of improvements, and each lot or parcel of land shall be considered as wholly unimproved."

It will be here observed that the cost of sewers may be paid from funds raised by general taxation or from special assessments laid in the particular manner above described. With respect to the appeal allowed from such action section 839 of the Iowa Code provides:

"Any person affected by the levy of any special assessment provided for in this chapter may appeal. * * * Upon such appeal, all questions touching the validity of such assessment, or the amount thereof, and not waived under the provisions of this chapter, shall be heard and determined."

This court is not aware of any decision of the Supreme Court of Iowa interpreting and limiting the words, "any special assessment," as used in this section; but the expression undoubtedly applies to and includes the assessment upon adjacent property in proportion to the benefit thereto provided for in section 819 and other sections, and therefore all questions touching the validity of such assessment or the amount thereof are permitted to be reviewed and judicially determined on such appeal.

We now look to the transcript of the proceedings before the city council of the city of Spencer to ascertain what was really done in the instant case. The resolution of the city council is as follows:

"Be it resolved by the city council of the city of Spencer, Iowa, that after full consideration of the schedule of assessments and the accompanying plat, showing the assessments proposed to be made for the cost and expenses of constructing a combined storm and sanitary sewer, the same being a main sewer, * * * which said plat and schedule were filed in the office of the city clerk on the 27th day of December, 1921, and of the filing of which notice has been published and posted as required by law and the order of this council, and after consideration of the objections to the assessments shown therein, filed by * * * Chicago, Milwaukee & St. Paul Railway Company, and after full consideration, appraisement, and apportionment of the special benefits conferred upon the property shown and described in said plat and schedule by the said improvement, this council finds that the said property is specially benefited by the said improvement in the amounts shown in said schedule, and that the said amounts are in proportion to the special benefits conferred upon the said property by said improvements, and not in excess of such benefits, * * * and that said objections filed thereto are without merit, and the same are therefore hereby overruled.

"Therefore, be it further resolved, that the said schedule of assessments and the accompanying plat be and the same are hereby approved, and that there be and is hereby assessed and levied as a special tax and assessment against and upon each of the lots, parts of lots, and parcels of real estate described in said schedule," etc.

From the foregoing it is apparent that the assessment under consideration is a special assessment, and purports to be laid according and in proportion to benefits.

Counsel for the motion rely principally in support of their contention that the instant proceeding is not a suit, within the meaning of the removal statutes, upon In re City of Chicago (C. C.) 64 Fed. 897; while counsel for petitioner cite and rely upon Com'rs of Road Improvement Dist. No. 2 v. St. Louis S. W. R. Co., supra.

The case of In re City of Chicago was a proceeding by the city of Chicago to lay a special assessment for the construction of a sewer. The proceeding was instituted pursuant to the statutes of Illinois by the city council petitioning the county court to assess the cost of constructing the sewer against such parcels of land as should be found benefited, in the proportion in which they were found severally benefited. In that case the county court under the state statutes acted as the original assessing body, although it appointed commissioners to ascertain and report the amount of benefits to the city and determine the assessment of the costs against the several parcels of land supposed to be benefited. The petition for removal was filed upon the return of the commissioners' report. The point was made that the proceeding was not a suit within the meaning of the statutes of the United States relative to the removal of causes. Premising the opinion of the court, District Judge Seaman said:

"There have been frequent definitions by the Supreme Court of a 'suit,' in the sense of these removal acts, applying it to all proceedings which are strictly judicial, and in which parties are litigating their rights."

The court quoted the language of Chief Justice Marshall in Weston v. City of Charleston, 2 Pet. 449, 7 L. Ed. 481, as follows:

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various; but, if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

The court in the case of In re Chicago undertook to demonstrate that the case under consideration, as it stood in the county court, was not a proceeding in which individual rights were to be determined, but, on the contrary, was merely an exercise of the legislative or administrative functions of a taxing tribunal. It was shown that under the statute of Illinois the county court was constituted the primary instrument for making the special assessment; and although it was further pointed out that the county court possessed judicial powers, and that hearings in the matter in question were conducted as in other cases at law, and that the final action of the court took the form of a judgment, nevertheless that it did not constitute a suit in the sense of the statute giving jurisdiction to the federal courts. The court held that the source and exercise of

the power was legislative or administrative, and not judicial, in its nature. The court held that the case was ruled by Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196. It does not seem to the writer of this opinion that the Upshur County Case necessarily ruled the case of In re Chicago. In the Upshur County Case the county court of West Virginia had no general judicial powers, and the case itself was in the nature of a review of the imposition of a general tax on land.

In the opinion of this court the case of In re Chicago is also distinguishable from the instant case. Under the Illinois statute the county court and its commissioners are empowered to determine the extent of the area benefited by the sewer, and then lay the entire cost of the construction upon the several parcels of land included in proportion to the benefits thereto. Now this method clearly does not contemplate limiting the tax imposed upon any particular parcel to the enhancement of value to that parcel. It is clear that the whole cost of construction, however exorbitant, may be laid upon the area determined, and that it be divided merely in proportion to the benefits. This clearly is merely tax equalization. This conclusion is further borne out by the statement in the statement of facts in Re Chicago, to the effect that upon trial of objections under the Illinois statute the—

"jury determines whether the premises of objectors are assessed more or less than their proportionate share of the cost, and what amount they should be assessed."

Now under the Iowa statute an entirely different situation arises. Under section 819, supra, the cost of any part of constructing sewers may be paid, first, from a district sewer fund of the sewer district in which the same is situated; or, second, from the city sewer fund; or, third, from general revenues—

"and the portion thereof not so paid, and not in excess of three dollars per linear foot of sewer, shall be assessed against the property abutting on such sewer in proportion to the number of linear front feet of each parcel thereof, *and upon adjacent property in proportion to the benefit thereto; but in estimating the benefits to result therefrom to adjacent property, no account shall be taken of improvements, and each lot or parcel of land shall be considered as wholly unimproved.*"

The quoted language does not imply merely an equalization and proportionate distribution of an aggregate cost. It does authorize the cost to be distributed in that way, either from the general fund, the city sewer fund, or a district sewer fund; but when it comes to the matter of special assessments, abutting property is limited to a certain amount per front foot, and adjacent property assessments to "the benefits to result."

From the whole context of the section I conclude that it was the intention of the Legislature to limit the special assessment upon adjacent property to the extent of the enhanced value resulting from the construction of the sewer. With respect to similar language relative to the assessment of adjacent property for constructing improvements, Mr. Justice Ladd, speaking for the Supreme Court of Iowa in Stutsman v. Burlington, 127 Iowa, 563, 103 N. W. 800, used the following language:

"The manner of assessing is prescribed by statute, but what shall be taken into consideration in determining to what extent the property has been en-

hanced in value by the improvement must depend on the circumstances of each particular case."

In Com'rs of Road Improvement Dist. No. 2 v. St. Louis, S. W. R. Co., supra, Mr. Chief Justice Taft, in delivering the opinion of the court, said:

"The determination of benefits in such cases is quite like the valuation of property under condemnation proceedings. The true inquiry is: What will be the effect of the proposed improvement upon the market value of the real property, including the buildings thereon? The board may consider what the property is then fairly worth on the market, and what will be the value when the improvement is made."

Of course the Iowa statute provides that for the purposes of estimating the benefits to result to the adjacent property each lot or parcel shall be considered as unimproved. This provision is not inconsistent with the idea that the parcel of property shall be charged to the extent of the particular value resulting from the improvement.

I am therefore of the opinion that the determination of the benefits to result to a particular parcel of adjacent ground from the construction of a sewer is not necessarily a matter of mere tax equalization; and whether a proceeding to determine such benefits is a suit, within the meaning of the removal statutes, is to be determined from the nature of the proceeding. The Iowa Supreme Court has consistently held the remedy by appeal to the district court in such cases to be exclusive. Minneapolis & St. Louis R. R. Co. v. Lindquist, 119 Iowa, 144, 93 N. W. 103; Owens v. City of Marion, 127 Iowa, 469, 103 N. W. 381. The statute (section 839, supra) provides that:

"Upon such appeal, all questions touching the validity of such assessment, or the amount thereof, * * * shall be heard and determined."

The statute further provides:

"The appeal shall be tried as an equitable action."

Now, here we have a proceeding in a court of general jurisdiction; we have parties on both sides, with issues joined touching property rights capable of judicial ascertainment; we have a statutory judicial remedy, which by the highest court of the state is held to be exclusive; we have it affirmatively and particularly declared that in this proceeding, all questions touching the validity of the assessment in controversy and the amount thereof shall be heard and determined.

In these circumstances I am constrained to the opinion that the proceeding is a suit, within the meaning of the removal statutes, and that the question under consideration is controlled by the decision of the Supreme Court of the United States in Com'rs of Road Improvement Dist. No. 2 v. St. Louis, S. W. R. Co., supra, and that the motion to remand should be overruled.