119 144
123 400
119 144
f126 699
119 144
127 472
e127 478
127 566
119 144
137 114
119 144
140 222
141 72
119 144
144 629

THE MINNEAPOLIS & ST. LOUIS R. R. Co. v. J. A. LINDQUIST, as Treasurer of Webster County, Iowa, THE CITY OF FORT DODGE AND JOHN LAUFERSWEILER, Appellants.

Injunction: SEWER ASSESSMENTS: FRONT FOOT RULE: CONSTITUTIONALITY. The cost of a sewer may be assessed against the abutting lots according to their frontage.

Same: ESTIMATE OF BENEFIT: SQUARE FEET IN LOTS. Where the
2   council makes the assessment, the fact that in estimating the proportionate benefit to the lots it takes into consideration the number of square feet in each, is immaterial, where i appears they are of the same length.

Same: ERROR IN ASSESSMENT: REMEDY. Where the council in
3   estimating the benefits for the purpose of assessment makes an error, the remedy is not an injunction to avoid the assessment but an appeal to the district court.

Same: TITLE: RIGHT OF WAY: Where a railway company seeks
4   by injunction to restrain the collection of the special assessment, and the pleadings show ownership of the lots in the company without disclosing the purpose of their purchase, it will be treated as owning the fee, though its tracks cross the same and its right of way is but an easement, and the same are subject to the assessment.

Same: RAILWAY PROPERTY: ENFORCEMENT OF ASSESSMENT: Spec-
5   ial assessments for the construction of sewers may be assessed against the parcels of land owned by a railway company, and with the exception of those parts occupied by its roadbed and right of way, may be levied upon and sold as other property.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, JANUARY, 24, 1903.

THE petition alleged plaintiff's ownership of lots 1, 2, 3, 4, and 5 in block 67, and lots 1, 2, and 3, in block 68, in Town Company's addition to Ft. Dodge; that in 1899 the city constructed a storm sewer in the alley intersecting

block 67, south of the lots mentioned therein, turning south in Third street, which separates them; that the cost thereof was assessed against said lots according to the number of square feet in each, without regard to the benefits conferred; that said improvement was of no benefit to said lots; that the statutes authorizing assessments were unconstitutional; that said assessments have been duly certified to the auditor of the county, who has placed the same on the tax lists, and the county treasurer has advertised the same for sale, and will sell them unless enjoined. In an amendment to the petition plaintiff averred that its railroad intersected the lots in block 67, and that its right of way had been assessed illegally. A restraining order was prayed, and a decree, on final hearing, declaring the assessments null and void. The defendants responded by admitting the construction of the sewer, asserting the assessment of the lots as directed by statute, and that the treasurer was proceeding in a lawful manner to collect the same. Hearing on the merits, and decree as prayed. The defendants appeal.—*Reversed.*

*M. J. Mitchell* for appellants.

*R. M. Wright* for appellee.

Ladd, J.—The storm sewer was constructed along the alley intersecting block sixty-seven of the Town Company's addition to Ft. Dodge immediately south of plaintiff's

1. SEWER assessments: front foot rule: constitutionality.

lots. Next east of this block, with Third street between them, is block sixty-eight, which, as the sewer turns south, is adjacent, but does not abut the property. All abutting lots were assessed for the payment of the cost of the sewers according to the front-foot rule. The point decided by the trial court was that the statute authorizing this was unconstitutional, relying on *Village of Norwood v. Baker*, 172 U.

S. 269 (19 Sup. Ct. Rep. 187, 43 L. Ed. 443). That case has been subsequently explained, and a contrary conclusion reached. *Hackworth v. City of Ottumwa*, 114 Iowa, 467.

II. Appellee argues that the assessment was according to the number of square feet in each lot. The number of square feet in each lot seems to have been computed and written over the corresponding lot as it appeared on the plat. But, as to abutting property this made no difference, for all such lots seem to have been the same length. The assessment against lot one, block sixty-seven, was separately computed as to parts on opposite sides of the railroad, but, as the petition alleged and the answer admitted plaintiff's ownership of the entire lot, this can make no difference. It simply involved the addition of the two amounts. There was no issue before the court as to whether any part of it belonged to another. Adjacent property is to be assessed, under the statute, according to actual benefits. The method of ascertaining these is not prescribed. No claim is made that the city council did not in fact make the assessment. Just what it took into consideration in reaching the result does not appear. It would seem important, however, in arriving at a just conclusion, to know the size of the parcel of ground affected, and, if all are similarly situated, the area of each might furnish a just basis for estimating proportionate benefits.

2. SAME: estimate of benefits; square feet in lots.

One witness testified that under present conditions, because of the natural drainage, the lots in block sixty-eight did not need artificial drainage, and would not sell for a dollar more. But permanent improvements are not made solely with reference to present conditions. They are for the future as well as the present, and benefits to be derived therefrom should be estimated accordingly. Even though a drain may not be required for a particular parcel of land, the fact that it is necessary to and improves that surrounding may work an indirect benefit to it in the

way of accessibility, convenience, and sanitary improve-
ments.  This evidence certainly fails to show said lots to
have derived no advantage.  But, even if it did, the rem-
edy was not by injunction, but by appeal to the district
court.  The statute expressly conferred upon the city

3. SAME: error    council the authority to assess the costs of the
in assessment;
remedies.    improvements against adjacent as well as
abutting lots, and, as no question is made with respect to
the regularity of prior proceedings, said council had juris-
diction to estimate the benefit.  If it made a mistake with
reference thereto, the statutes point out the remedy.
Section 823 of the Code provides for notice, and allows all
parties aggrieved to file objections with the city council.
The next section reads:  "All objections to errors, irreg-
ularities or inequalities in the making of said special
assessments, or in any of the prior proceedings or notices
not made before the council at the time and in the man--
ner herein provided for, shall be waived except where
fraud is shown."    Section 839 allows an appeal to the
district court, "where all questions touching the validity
of such assessments, or amount thereof, and not waived
und·r the provisions of this chapter, shall be heard and
determined."  The plaintiff failed to avail itself.of either
remedy.  As they were entirel; adequate to the adjust-.
ment of the amount, if any, to be levied, another and
especially collateral remedy in its nature could not be re-
sorted to.  *Plymouth County v. Moore*, 114 Iowa, 700; Van
Fleet, Collateral Attack  5; Sutherland, Statutory Construc-
tion, section 399.  The vice in appellee's argument lies in the
assumption that the assessment was made on a basis not
authorized by law, and to that point the decisions cited
tend.  See *Hassan v. City of Rochester*, 67 N. Y. 529;
*Hayes v. Douglas Co.*, 92 Wis. 429 (65 N. W. Rep. 482,
31 L. R. A. 213, 53 Am. St. Rep. ѕ26).  This, as seen is
not correct.

III.    The plaintiff's line of railroad crosses the lots in block sixty-seven, and it contends that no part of the cost of the improvement may be assessed against that portion of the right of way.    This is based on two grounds:    (1) That the right of way is a mere easement; and (2) that a fragment of the right of way, with its ties and tracks cannot be sold in order to pay the assessment.    But there was no easement in these lots. Ownership thereof is distinctly alleged in the petition and admitted in the answer.    Under these circumstances its title must be treated as absolute, regardless whether occupied by tracks or not.    True, as urged by appellee, the conveyance of land for right of way purposes has been held to pass an easement only.    *Brown v. Young*, 69 Iowa, 625; *Skillman v. Railway Co.*, 78 Iowa, 404.    The object originally had in obtaining these lots is not disclosed by the records, and we must assume, in view of the pleadings, that they were so acquired as to pass the fee title.    In this respect the case is to be distinguished from *Chicago, R. I. & P. Ry. Co. v. City of Ottumwa*, 112 Iowa, 300. There the majority held that a right of way, when a mere easement, was not assessable with the cost of the improvement, under the statute involved; following, as is said, *City of Muscatine v. Chicago, R. I. & P. Ry. Co.*, 88 Iowa, 291.    The latter case seemed to hold that land to which the company had title must bear its burden of the cost of improvement, and I do not understand any departure therefrom to have been intended.    Certainly it was so decided in that case when first before the Court.    *City of Muscatine v. Chicago, R. I. & P. Ry. Co.*, 79 Iowa, 645. Section 819 of the Code, after authorizing payment of the cost, or any part of it, from the district sewer fund, city sewer fund, or from the general revenue, reads:    "And the portion thereof not so paid, and not in excess of $3 per linear foot of sewer, shall be assessed against the property abutting on the sewer in proportion to the number of

4.    Same; title; right of way.

linear front feet in each parcel thereof and upon the adjacent property in proportion to the benefit thereto." It is apparent, without differentiating between this statute and that under consideration in the *Ottumwa Case*, that the lots of plaintiff come clearly within the language of this section.

IV. Appellee also contends that right of way cannot be sold to pay the assessment. The conflict in the authorities on this subject was recognized in *Chicago, R. I. &*

5. SAME; railway property; enforcement of assessment. *P. Ry. Co. v. City of Ottumwa, supra,* and many of them cited though the point was not decided. In view of the provisions of section 840 of the Code, we shall not determine it now. That reads: "All special assessments made under this chapter against any railway or street railway shall be a debt due personally from such railway. Such special assessment and each installment thereof, and certificates issued therefor when due, may be collected in the district or superior court by action at law, in the name of the city or town against such railway or street railway, or the lien thereof enforced against the property of such railway or street railway, on or against which the same has been levied, by action in equity, by the election of the plaintiff; and in action at law where pleadings are required it will be sufficient to declare generally for work and labor done or materials furnished on the particular street, avenue, alley or highway, the levy of tax and the non-payment of same; and in any action in equity it shall be sufficient to aver the same matters, together with a particular description of the property or parts thereof against which such lien is sought to be enforced." It will be time enough to determine whether the roadbed may be sold when a lien thereon is sought to be established and enforced against it under this statute. Assessments are to be levied on parcels of land aside from that made use of in carrying on business peculiar to railroading by virtue of section 825 of the Code,

and these sold like the property of any other corporation or individual under section 829.

As to such claims the statute quoted seems to afford an additional remedy, though we do not so decide, as the question is not before us. It could hardly have been intended by the legislature, however, that the roadbed ·or right of way or other property so connected with the operation of the railroad as that its loss by conveyance or sale would necessarily dismember and break up the entirety and utility of the road as a line of travel and commercial intercourse, thereby interfering with the paramount interest of the public in these purposes, should be seized in small parts, abutting local improvements in the numerous cities and towns traversed by the lines, and these separately exposed for sale by the several county treasurers and conveyed upon the failure of the companies to promptly meet their tax burdens. This, we do not think, was contemplated by section 829 of the Code, but that the remedies available in such cases are those provided by the statute quoted. Two-thirds of the lots in controversy were not used by the plaintiff in carrying on its business of railroading, and to this extent these were, therefore, subject· to assessment and sale, the same as property belonging to individuals. As against such property, then, the county treasurer was authorized to proceed, but could not properly expose the right of way or roadbed for sale. These may not be seized (if at all) save by virtue of a judgment or decree of court.—REVERSED.